EMERSON and HENRY *vs.* BOWERS. executor, &c.

Where it appeared, before a surrogate, on an application by legatees, for the removal of an executor, &c. that no inventory had been filed by him; that the executor was squandering the estate in useless litigation; that he had delivered over to his attorney all the money and mortgages of the estate, and was ignorant as to what mortgages belonged to the estate; that he could not read writing, or write good English; and that he had little or no property, was not in any steady or useful employment, kept no accounts, and had no knowledge of the condition or disposition of the trust property, except what was derived from his attorney; *Held,* that these facts were sufficient to justify the removal of the executor, on the ground of improvidence and incompetency.

THIS was an appeal by Conrad Bowers, from a decree of the surrogate of the county of Queens, removing him from his trust as executor of Peter Marks, deceased.

*H. H. Burlock,* for the appellant.

*Litchfield & Tracy,* for the respondents.

*By the Court,* BROWN, J. The appellant, Bowers, and one Peter Pinckney, were appointed the executors of the last will and testament of Peter Marks, deceased, and letters were duly issued to them by the surrogate of the county of Queens. Pinckney had the entire charge of the estate until 1846, when he died, and Bowers then became the sole executor. The respondents are entitled to certain legacies given by the will of the testator, payable at the death of one John Marks, who is still living. The complaint or petition, which was filed with the county judge, sitting as surrogate of the county of Queens, on the 2d day of May, 1851, after setting out the interests of the respondents in the estate, charges that personal property of the value of $20,000, upon the death of Pinckney, the co-executor, passed into the hands of Bowers, who has since had the entire charge and management thereof. That no inventory had been filed. That the circumstances of Bowers afford no adequate security for the due administration of the estate; that he is

squandering and appropriating the same to his own use, and has already squandered a considerable portion thereof. The petition prayed that an inventory might be filed, and Bowers removed from his trust as executor, or required to give security for the faithful execution of his trust, should he be continued as executor. The surrogate made a decree removing him from his office; from which he has appealed to this court.

Upon the hearing before the surrogate, Bowers was examined as a witness; and a few facts furnished by himself, will show some of the reasons why he should be superseded. Amongst the effects of the estate, at the time of his co-executor's death, was the bond and mortgage of Pascal B. Smith, to secure the payment of $7400, with the interest. When asked whether he had such a mortgage, he replied that he did not know. When asked what he had done with the money and mortgages of the estate, he said he had delivered them all over to his attorney; and when required to give some reason for thus dispossessing himself of the trust property, he replied that the attorney said he would be answerable for all the damages. He further said, he had received from this same attorney, $1026 for interest; and $1000 from another person for principal, of the trust property, and to secure its repayment he assigned to his attorney a lease he held for a term of years, upon certain real estate in the city of New-York. He further said he could not read writing, or write good English. The evidence also disclosed that four lawsuits, brought by four different legatees, to recover legacies, were the principal fruits of his administration. They were removed by him from the surrogate's court to the supreme court, and from thence to the court of appeals. He was beaten throughout, at a loss to the estate under his protection of $6000, in costs and counsel fees. He has little or no property, was not in any steady or useful employment, kept no accounts, and had no knowledge of the condition or disposition of the trust property, except such as his attorney was pleased to communicate. If these facts proved his circumstances so precarious as to afford no adequate security for the due administration of the estate, then it was the duty of the surrogate to require security.

But if they made out improvidence, then he had become incompetent, and the surrogate was bound to remove him. The surrogate adopted the latter conclusion, and made a decree for his removal.

The 5th subdivision of section three of the act concerning the granting of letters testamentary, (2 *R. S.* 69,) declares that no person shall be deemed competent to serve as an executor, who upon proof shall be adjudged incompetent by the surrogate to execute the duties of such trust, by reason of drunkenness, improvidence, or want of understanding. Sections 18 and 21 of the same act provide, that if after letters testamentary have issued, the person appointed executor shall become incompetent by law to serve as such, upon proceedings had before the surrogate and proof of such incompetency, he shall by order supersede the letters, and the rights and authority of such executor shall thereupon cease. The revisers, in their notes, say that in many states executors are required to give bonds, like administrators, and they hesitated much whether such a provision ought not to be introduced here. Upon consideration, however, they adopted the provisions in regard to security, and the removal of the executor, in place of demanding the bond at the time the letters issued. Proof that the person named as executor is incompetent when he applies for the letters is enough to exclude him, and proof that he has become incompetent since is sufficient to supersede him.

Did the proof furnished at the hearing establish the fact that Bowers was incompetent? The improvidence which renders a man incompetent, signifies want of care and foresight in the management of whatever may be put under his control. Without prudence, care and foresight, property, whatever may be its kind or quality, is sure to go to decay and diminish in value. The improvidence which the framers of the revised statutes had in contemplation as a ground of exclusion, is that want of care and foresight in the management of property which would be likely to render the estate and the effects of the intestate unsafe and liable to loss or to be diminished in value by improvidence in case administration should be committed to such improvident

---

Emerson v. Bowers.

---

person. The principle of exclusion in this part of the statute is based upon the well known fact, that a man who is careless and improvident, or who is wanting in ordinary care and forecast in the acquisition and preservation of property for himself, cannot with safety be intrusted with the property of others. (*Coope* v. *Lowerre*, 1 *Barb. Ch. Rep.* 47.) The office of executor is one of trust and confidence, and cannot be delegated to another. The executor may—and it is often indispensable that he should— avail himself of the aid and advice of professional men ; but he cannot, without a gross dereliction of duty, give up to others the possession and control of the trust estate, and leave them to manage it according to their own pleasure. In the present case, the omission or the inability of the executor to make himself acquainted with the nature and character of the trust property, the absence of books of account exhibiting its situation and disposition, with a statement of his receipts and expenditures, affords clear and positive proof of incompetence, because unless he knew what the estate was, and where it was, how could he exercise any care or skill or common sense in its preservation ? When he suffered it to pass out of his own hands into those of his attorney, he was guilty of the grossest misconduct and improvidence ; for he voluntarily gave up all his power and authority as trustee, and left the subject of the trust to the management and the mercy of a person whom the testator did not select, and who was most probably a stranger to him and the objects of his bounty. One of the worst dispositions which could be made of the property was to put it under the control of a person whose interests were not in harmony with the interests of those for whom it was ultimately intended. Protracted litigation, objections and obstacles interposed to just claims, which should have been met and adjusted in a friendly spirit, lawsuits carried from court to court with the same untoward result, costs, counsel fees and expenses might enlarge the circle of his worldly comforts, while they would materially circumscribe that of the *cestuis que trust*. Litigation, protracted from the inferior tribunals to the court of the last resort, is a most wasting process when applied to the estates of the living or the dead ; and the obligation of a

trustee, to save the property confided to his protection from its consequences, is as imperative as it is to ward off waste and destruction when it comes in any other form.   This is the second case argued at this term, where the papers show that the trustee converted himself into a man of straw, and turned the entire effects of the estate, together with their exclusive management, into the hands of his attorney.   In both cases the interest of the *cestuis que trust* have shared the same fate; for both exhibit the fact that one-third of the trust property has been devoured by the costs and expenses of unnecessary and useless litigation. The proof leaves no doubt of the improvidence and utter incompetency of Conrad Bowers to execute the duties of his trust as executor; and I am therefore of opinion the decree of the surrogate should be affirmed, with costs.

[ORANGE GENERAL TERM, April 4, 1853.   *Barculo, Brown* and *S. B. Strong,* Justices.]